UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| DAVID WIREMAN, ) | |
| ) | Civil No. 7:19-cv-00110-GFVT |
| Plaintiff, ) | |
| ) | |
| V. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| ANDREW SAUL, Acting Commissioner of ) | **ORDER** |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

*** *** *** ***

David Wireman seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied his claim for supplemental security income and disability insurance benefits.  Mr. Wireman brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter.  The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Mr. Wireman's Motion for Summary Judgment and **GRANT** the Commissioner's.

**I**

**A**

Plaintiff David Wireman initially filed an application for Title II disability insurance benefits on December 9, 2016, alleging disability beginning December 1, 2016.  [Transcript (hereinafter, "Tr.) 19.]  That claim was denied on February 28, 2017 and denied again upon reconsideration on April 24, 2017.  *Id.*  Mr. Wireman requested a hearing that was held on November 29, 2018, via videoconference, where he was represented by an attorney.  *Id.*  Mr. Wireman testified, alongside Carly Coughlin, an impartial vocational expert.  *Id.*  The Appeals

Council denied Mr. Wireman's request for review on January 23, 2019, making the earlier ALJ decision final. [Tr. 9-16.]; 20 C.F.R. § 422.210(a).

To evaluate a claim of disability for Title II disability insurance benefit claims, an ALJ conducts a five-step analysis. *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claim) *with* 20 C.F.R. § 416.920 (claims for supplemental security income).[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." C.F.R. § 404.1530(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assess an individual's ability to perform certain physical and metal work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

---

[1] For purposes of a disability insurance benefits claim, a claimant must show that his impairments were disabling prior to the date on which his insured status expired. 20 C.F.R. § 404.131. Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical. Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits. Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At step one, the ALJ found Mr. Wireman had not engaged in substantial gainful activity since the alleged onset date, December 1, 2016. [Tr. 22.] At step two, the ALJ found Mr. Wireman to suffer from the following severe impairments: mild right shoulder degenerative joint disease, coronary artery disease, status post myocardial infarction, hypertension, and mild obesity. *Id.* Additionally, at this step, the ALJ indicated that, although the record did not establish that Mr. Wireman's diabetes and elbow pain were "severe," he still considered these conditions while determining Mr. Wireman's residual function capacity ("RFC"). *Id.* at 23. At step three, the ALJ determined his combination of impairments did not meet or medically equal one of the listed impairments in C.F.R. Part 404 or 416. *Id.* Before moving on to step four, the ALJ considered the record and determined that Mr. Wireman possessed the following residual functioning capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can frequently but not constantly reach overhead with the dominant right upper extremity; frequently balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; and is precluded from climbing ladders, ropes, and scaffolds, and from concentrated exposure to unprotected heights and hazardous machinery.

[Tr. 24.] After explaining the RFC, the ALJ found at step four that Mr. Wireman is unable to perform any of his past relevant work as a grader operator and heavy equipment

3

operator due to the level of physical exertion required in each role. *Id.* at 27. At step five, however, the ALJ accepted the vocational expert's testimony that several jobs existed in the national economy that Mr. Wireman could complete, notwithstanding his medical diagnoses and lowered residual functional capacity.[2] [Tr. 28.] Because the ALJ found that Mr. Wireman could work in these existent roles, he was deemed "not disabled." *Id.* at 29. Mr. Wireman filed this action for review on December 3, 2019. [R. 1.]

**B**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319–20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.

---

[2] The vocational expert testified that Mr. Wireman could work as a parts picker, dish washer, or janitor. [Tr. 28.]

4

*Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## II

Mr. Wireman presents three arguments as grounds for relief from the ALJ's unfavorable decision. Specifically, he argues (1) the ALJ failed to include his diabetes and elbow pain as severe impairments, (2) the ALJ failed to give adequate reasons for discounting the opinion of Dr. Goble, Mr. Wireman's treatment physician, and (3) the ALJ erred in assigning substantial weight to the opinion of Dr. Douglas Back, the non-examiner. [R 7-1 at 1.] For the reasons set forth below, Mr. Wireman's arguments do not warrant reversal of the ALJ's determination.

### A

First, Mr. Wireman argues the ALJ failed to include his diabetes and elbow pain as severe impairments at step two of the sequential evaluation process. *Id.* at 2. Mr. Wireman argues that step two's process of determining severity is designed to weed out "totally groundless claims," which have "no more than a minimal effect on the individual's ability to work." *Id.* at 3 (citing 20 C.F.R. 404.1522; *Farris v. Sec'y of H.H.S.*, 773 F.3d 85. 89-90 (1985)). Mr. Wireman disputes the ALJ's rationale that his diabetes and elbow pain are not severe because they are "infrequently mentioned within the record, and the record does not otherwise establish that they have significantly limited

5

his ability to perform basic work activities for a period lasting or expected to last 12 consecutive months." [R. 7-1 at 3; Tr. 23.] Mr. Wireman argues that "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability . . . ." *Id.* at 5 (quoting *Higgs v. Bowen*, 880 F.2d 862, (6th Cir. 1988)). Mr. Wireman then references at length the various times that his diabetes and elbow pain are mentioned in the record and the affects these conditions have on his livelihood. [R. 7-1 at 3-5.]

In response, the Commissioner argues that whether the ALJ concluded that Mr. Wireman's diabetes and elbow pain were "severe" had no impact on whether disability benefits were granted and is therefore meritless. [R. 9 at 5.] The Commissioner explains that "whether a claimant has a 'severe' impairment is simply a threshold determination designed to screen out wholly groundless disability claims" and that, as long as at least one "severe" impairment is found, the evaluation process proceeds forward. *Id.* at 6. Furthermore, when the process proceeds forward, both "severe" and "non-severe" conditions are taken into account to determine residual functional capacity. *Id.* The Commissioner argues that, because the evaluation process proceeded beyond step two, whereupon the ALJ considered both Mr. Wireman's "severe" and "non-severe" impairments, the issue of whether the ALJ found Mr. Wireman's diabetes and elbow pain to be non-severe is "legally irrelevant." *Id.* at 6-7. (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).[3]

---

[3] ("Because the ALJ considered these impairments when determining Fisk's residual functional capacity, '[w]e find it unnecessary to decide' whether the ALJ erred in classifying the impairments as non-severe at step two.")

6

The Court agrees with the Commissioner for several reasons. First, this Court is not permitted to conduct a *de novo* review of the ALJ's determinations and only serves to determine whether the ALJ had substantial evidence to support his decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319–20 (6th Cir. 1987). Here, the classification of Mr. Wireman's diabetes and elbow pain as "non-severe" had no impact on whether substantial evidence existed because Administrative Transcript makes clear that the ALJ properly considered both Mr. Wireman's "severe" and "non-severe" impairments. [Tr. 23.] Second, the Commissioner's classification of Mr. Wireman's diabetes and elbow pain as "non-severe" did not prevent his claim from proceeding forward to later steps in the evaluation process. Thus, it is of little consequence. [R. 9 at 6-7.]

**B**

Next, Mr. Wireman argues that the ALJ failed to adequately provide good reasons for discounting treating physician Dr. Goble's opinion. [R. 7-1 at 6.] The Social Security Administration has set forth certain guidelines that an ALJ must follow when determining how much weight to assign a treating medical source. The regulations provide:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(c)(2). Other factors which must be considered when the treating source opinion is not given controlling weight include the length of the treatment relationship, the

7

frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with other evidence in the record, and whether the treating source is a specialist. 20 C.F.R. §§ 404.1527(c)(2)(i)–(ii), (c)(3)–(5); 416.927(c)(2)(i)–(ii), (c)(3)–(5).

The regulations also contain a clear procedural requirement that an ALJ must give "good reasons" for discounting a treating physician's opinion, specific enough "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. §§ 1527(c)(2), 416.927(c)(2); Social Security Ruling ("SSR") 96-2, 1996 WL 374188, at *5 (July 2, 1996). The purpose of the reason-giving requirement is to allow "claimants to understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (cleaned up). In addition, the requirement "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* Failure to follow the procedural requirement denotes a lack of substantial evidence, even where the ALJ's conclusion may otherwise be justified on the record. *Id.* at 546.

Mr. Wireman asserts that Dr. Goble "has treated [him] for many years for diabetes, hypertension, hyperlipidemia, back pain, elbow pain, and shoulder pain" and that "Dr. Goble knows [his] condition best of all." [R. 7-1 at 6.] The record indicates that Dr. Goble has indeed treated Mr. Wireman on several occasions; however, Dr. Goble's analyses include many contradictions. For example, on October 11, 2018, Dr.

8

Goble completed a medical statement which indicates that Mr. Wireman had limited mobility, flexibility, and could only "occasionally lift 10 pounds and frequently lift 5 pounds." *Id.* at 7. In comparison, on February 13, 2017, Dr. Goble found that Mr. Wireman had "[f]ull strength in all extremities]," a "normal gait," and could lift thirty-five to forty pounds. [Tr. 784-787.]

Mr. Wireman alleges that, regardless of the contradictions in Dr. Goble's examinations, Dr. Goble's opinion should have been afforded substantial weight and the ALJ failed to articulate good reasons for his decision to not do so. [R. 7-1 at 6-7.] Additionally, Mr. Wireman argues that the ALJ's citations to out-of-circuit opinions require remand. [R. 7-1 at 7.] In opposition, the Commissioner argues that the ALJ did provide "good reasons" for affording Dr. Goble's opinion little weight when he referenced clear contradictions in Dr. Goble's analyses as rendering his opinion unreliable. [Tr. 27-28]; *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) (treating physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence."). Regarding the inconsistencies in Dr. Goble's opinions, the Commissioner states:

> [T]he ALJ reasonably found that Dr. Goble's extreme opinions that Plaintiff could not even perform the minimal demands of sedentary work were entirely out-of-line with the examination findings of the record, (including Dr. Goble's own findings), and reasonably gave the opinions little weight.

[R. 9 at 9.] The Court agrees with the Commissioner that the ALJ provided "good reasons" for affording Dr. Goble's opinion little weight. The ALJ ruled that Dr. Goble's inconsistent opinions (with both his own findings and the findings of other experts involved) required his opinion be given lower weight. The ALJ's written rationale "make[s] clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the

9

reasons for that weight." 20 C.F.R. §§ 1527(c)(2), 416.927(c)(2); Social Security Ruling ("SSR") 96-2, 1996 WL 374188, at *5 (July 2, 1996). The ALJ is only required to give a treating physician's opinions "great weight if they are supported by sufficient clinical findings and are consistent with the evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 535, 529-30 (6th Cir. 1997). Thus, it is improper to denote a lack of substantial evidence on this ground.

### C

Finally, Mr. Wireman argues that "the ALJ erred in assigning substantial weight to the non-examiner, Dr. Douglas Back's opinion, who had not reviewed the complete record and whose opinion is inconsistent with the treating physician's opinion." [R. 7-1 at 8.] In formulating Mr. Wireman's RFC, the ALJ adopted Dr. Back's opinion which indicated that Mr. Wireman can perform medium work.[4] *Id.* Mr. Wireman argues that Dr. Back had not reviewed various X-rays of his left elbow and right shoulder, had not reviewed records noting his pains, and was not aware that he had received injections for shoulder rain. *Id.* at 9. Ultimately, Mr. Wireman argues that, because Dr. Back's testimony is "completely inconsistent" with Dr. Goble's testimony and because Dr. Back did not see the complete record, the ALJ has committed reversable error. *Id.*

In response, the Commissioner states that no error occurred because the ALJ took into account that Dr. Back was not privy to the complete record and supplemented his findings in response. [R. 9 at 10.] The Commissioner states that the ALJ took account of the worsening of Plaintiff's shoulder injury after Dr. Back's report was filed and limited the ability of Mr. Wireman to "no more than frequent reaching overhead with his right arm and no climbing ladders, ropes, or scaffolds, or working around hazards or machinery" in response. *Id.* The

---

[4] "Medium work" is defined as work requiring the lifting of no more than fifty pounds at a time with frequent lifting or the carrying of objects weighing up to twenty-five pounds. [R. 7-1 at 8, n.2]

10

Commissioner argues that, even having taken account the supplemented information, the ALJ still determined that Mr. Wireman could perform medium work. *Id.* The Court agrees with the Commissioner because the Sixth Circuit has indicated that an ALJ's consideration of conditions that have changed beyond that which a physician's report reflects does not require reversal. *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (unpublished) ("McGrew also argues that the ALJ improperly relied on the state agency physicians' opinions because they were out of date and did not account for changes in her medical condition. It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after Dr. Starkey's assessment, AR at 14-20, including Dr. Goldstick's contrary assessment, and took into account any relevant changes in McGrew's condition.").

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff David Wireman's Motion for Summary Judgment [**R. 7**] is **DENIED**, but the Commissioner's Motion for Summary Judgment [**R. 9**] is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 10th day of December, 2020.

Gregory F. Van Tatenhove
United States District Judge